No. 11,442.

THE STATE *v.* MARKINS ET AL.

CRIMINAL LAW.—*Incest.*—*Evidence.*—On the trial of an indictment for incest, after evidence of incestuous intercourse had been introduced, the State offered to prove prior acts of indecent familiarity and sexual connection between the parties, for the purpose of strengthening the evidence already in.

*Held,* that it was error to exclude the offered evidence.

From the Vigo Circuit Court.

*J. W. Shelton,* Prosecuting Attorney, *D. N. Taylor, J. G. McNutt* and *S. R. Hamill,* for the State.

*S. C. Davis, S. B. Davis, G. E. Pugh* and *H. C. Pugh,* for appellees.

ELLIOTT, C. J.—The indictment charges the appellees with having committed the crime of incest on the 6th day of March, 1882, and the State introduced evidence of incestuous intercourse on that day. After the introduction of this evidence the State offered to prove that prior to that time acts of indecent familiarity took place between the appellees, and that they had been guilty of sexual intercourse. At the time this evidence was offered, the prosecuting attorney stated to the court that the purpose in offering it was not to prove distinct and substantive offences, but to prove lascivious and improper conduct between the defendants prior to March 6th, 1882. The court excluded the evidence, and that ruling is properly presented for our consideration.

The purpose for which the evidence was offered having been stated to the trial court, the inference that it was offered generally, and without any limitation as to the object of the prosecutor in offering it, is fully rebutted. The question for our decision is, therefore, whether it was competent for the purpose for which the State informed the court it was offered.

In *Lovell* v. *State,* 12 Ind. 18, it was held that evidence of acts of sexual intercourse subsequent to the time laid in the indictment, and identified by the evidence introduced by the

State was incompetent, and it is confidently asserted that the decision in that case governs the present. But the cases are very different. Previous acts of lascivious familiarity would tend strongly to show the commission of the specific offence charged by the State, for it is impossible to doubt that evidence of such a character tends to make it probable that the parties did commit the specific offence charged. Such evidence goes in proof of the main offence, because it is evidence of the probability of its perpetration. Where the acts precede the offence, they constitute the foundation of an antecedent probability; but where they follow the main offence their force and effect are materially different. It is one thing to affirm that evidence of prior incestuous intercourse is competent, and another thing to affirm that evidence of subsequent sexual intercourse is not competent; it is, therefore, not difficult to discriminate between the two cases.

It is a rule of elementary logic, as well as of rudimentary law, that evidence which tends to establish facts rendering it antecedently probable that a given event will occur, is of material relevancy and strong probative force. It is more probable that incestuous intercourse will take place between persons who have conducted themselves with indecent familiarity than between those whose behavior has been modest and decorous. It can not be doubted that it is competent to show the previous intimacy between the persons charged with the crime of incest, their behavior toward each other and their acts of impropriety and indecency. If it be proper to show acts of indecent and lascivious character, then, surely, it must be proper to show the act to which all such indecent and lascivious acts lead, and in which they will often culminate. It can not be held, upon any principle of law or logic, that the State may show acts of improper intimacy up to the very act of sexual intercourse, and then must stop, although the sexual intercourse is but the usual result of the previous lascivious conduct. If the course of conduct tends to show that the in-

cestuous intercourse charged in the indictment did take place, then, surely, the culminating act of sexual commerce must be evidence of a convincing character. It would be a singular rule that would admit evidence of lascivious conduct, and yet exclude evidence of the act, which of all the series supplies the strongest evidence that the crime charged was one likely to be committed. If the rule were that the State might show previous lascivious conduct, but must not show an act of sexual intercourse, we should have the singular anomaly of a legal rule rejecting evidence simply because of its strength and importance. The usual rule of common sense, as of law, is, that the more material the evidence and the stronger its probative force the greater the reason for holding it to be competent.

The intercourse between the sexes which constitutes the prime element in the offences of adultery, fornication, incest and seduction, can only take place by the concurrence of two persons of opposite sexes, and the previous lascivious conduct of the parties is evidence of their disposition to indulge their lustful passions. The probability that a woman will yield to the embraces of a man to whom she has before submitted, or to whom she has for a long time allowed improper familiarities, is much stronger than if it appear that no intimacy had existed between the parties, and the woman's conduct had always been modest and discreet. The disposition of the parties involved in the crime becomes an element of importance, and the disposition of the woman is shown by her conduct toward the man with whom she joins in violating the law. It is but natural to infer that a woman, whose conduct has been immodest and licentious, will be more likely to sin than one whose conduct has been modest and discreet. A truth recognized by the ordinary sense and experience of mankind was well expressed when it was said: " You will more readily infer assent in the practiced Messalina, in loose attire, than in the reserved and virtuous Lucretia."

The general rule undoubtedly is, that one crime can not be proved in order to establish another independent crime, but

this rule does not apply to cases where the chief element of the offence consists in illicit intercourse between the sexes. The decisions all agree that the cases growing out of illicit commerce between the sexes are not within the general rule. In the case of *People* v. *Jenness*, 5 Mich. 305, it was held that evidence of other acts of sexual intercourse was competent in prosecutions for incest. The case was fully argued, and the opinion is an able one. We quote from it the following: "Previous familiarities, not amounting to actual intercourse, but tending in that direction, must have a strong bearing in all cases of this kind; and we can discover no just principle on which they could have been excluded, without setting at defiance the common sense of mankind. Such evidence was given in this case by the father and mother of the girl, without objection from the defendant; and if such familiarities may be shown because they *tend* to prove actual intercourse, or to corroborate other evidence of such intercourse, upon what principle can previous *actual intercourse* be rejected, when offered for the same purpose? It is the principal and most important act of familiarity, to which the others only tended."

The general rule which governs the class of cases to which the present belongs is thus stated in *Lawson* v. *State*, 20 Ala. 65: "In all cases, whether civil or criminal, involving a charge of illicit intercourse within a limited period, evidence of acts anterior to that period may be adduced in connection with, and in explanation of, acts of a similar character occurring within that period, although such former acts would be inadmissible as independent testimony, and, if treated as an offence, would be barred by the statute of limitations." This statement of the rule is substantially borrowed from the text-writers. 2 Greenl. Ev., section 47; Whart. Crim. Ev., section 35. In discussing the general subject, the Supreme Court of Massachusetts said: "The intent and disposition of the parties towards each other must give character to their relations, and can only be ascertained, as all moral qualities are,

from the acts and declarations of the parties.   It is true, that the fact to be proved is the existence of a criminal disposition at the time of the act charged; but the indications by which it is proved may extend, and ordinarily do extend, over a period of time both anterior and subsequent to it.   The rules which govern human conduct, and which are known to common observation and experience, are to be applied in these cases, as in all other investigations of fact.   An adulterous disposition existing in two persons towards each other is commonly of gradual development; it must have some duration and does not suddenly subside.   When once shown to exist, a strong inference arises that it has had and will have continuance, the duration and extent of which may be usually measured by the power which it exercises over the conduct of the parties." *Thayer* v. *Thayer*, 101 Mass. 111. The court from whose opinion we have quoted formerly held a different doctrine, and Mr. Bishop, in the course of a sharp criticism upon that holding, said: " But strangely enough the Massachusetts court further held, on an indictment for adultery, that, if the anterior familiarities extend so far, or are of such character as to show adultery actually committed on this previous occasion, the evidence of them—that is, of the previous adultery—is not admissible: according to which doctrine, if the evidence is a little weak, yet tending remotely to establish the crime, it may be submitted to the jury; but, if it is a little stronger and tends more clearly to the same result, it must be excluded! " Bishop Stat. Crimes, section 680.

In *State* v. *Bridgman*, 49 Vt. 202, S. C., 24 Am. Rep. 124, very many authorities are reviewed, and it was held, in an opinion of much force, that evidence of former acts of sexual intercourse is admissible.   Among the later cases declaring this general doctrine are *State* v. *Pippin*, 88 N. C. 646, and *State* v. *Kemp*, 87 N. C. 538.

The court erred in excluding the evidence offered by the State, and the appeal is sustained, at the costs of the appellees.

Filed May 26, 1884.