## LEROY BRYANT *v.* STATE OF INDIANA.

[No. 277S131. Filed June 15, 1978. Rehearing denied August 31, 1978.]

*William C. Erbecker,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Alembert W. Brayton,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Bryant was charged with the first-degree murder of one David Williams Jr. At the conclusion of a jury trial in the Marion Criminal Court on August 31, 1976, appellant was found guilty of second-degree murder. He was sentenced to a term of not less than fifteen nor more than twenty-five years.

Appellant raises two issues for our consideration in this appeal: (1) an alleged error in the failure of the police to take lie detector tests and paraffin tests of appellant, and; (2) sufficiency of the evidence and the credibility of the state's principal witness.

## I.

Appellant claims that he asked the police to give him lie detector and paraffin tests. The purpose of the paraffin tests would have been to determine whether or not there were gun powder fragments on appellant's hands which would indicate if he had shot a gun recently. The police allegedly refused to give these requested tests. Appellant claims that this is tantamount to a suppression of evidence, as he is certain that both tests would show that he was innocent of this crime.

Police officers deny that appellant ever made reference to the taking of a lie detector test. They also testified that appellant did make some statement to them to the effect that, "don't they have some kind of test that can prove I'm innocent?," and that they then told appellant that there was no such test. Officer Patton of the Indianapolis police testified that paraffin tests are no longer used, and have been replaced by a neutron activation test. He said there would have been no point in taking this test at the time appellant's arrest, since gunpowder tends to wash off very easily and could have been washed off by appellant within the couple of hours since the incident, and also since chemical reaction in the skin tends to wash gunpowder off in a very short time. Appellant's trial testimony relating to the request for the paraffin test is essentially the same as the police officers' testimony.

Appellant's contention that the refusal of these tests amounts to a suppression of evidence by the state has no merit. Appellant raised no such question at trial even though the above facts were testified to by the witnesses. The question of suppression has first been raised on appeal. Further, appellant could have submitted himself to a lie detector test had he wished to do so, and could have attempted to stipulate it into evidence, should it have been favorable to him. The speculative results of such test thus do not represent evidence peculiarly within the knowledge or possession of the state. Indeed, they do not represent evidence at all. The possibilities of whether or not paraffin

or neutron activation tests might have helped establish any facts in the case are also speculative. The question presented under this issue is simply one concerning the weight or the credibility to be given to the police officers in their investigation and trial testimony. The jury heard all of this testimony, together with all of the other facts, and made its determination. No legal question is raised which can be considered by this court on appeal, nor is anything presented here which as a matter of law merits reversal of the judgment.

## II.

Appellant next contends that the evidence was insufficient to support his conviction. He specifically contends that the testimony of the state's principal witness was not credible. Also, in the sufficiency context, appellant reargues the issue of the tests already discussed and disposed of in issue I of this opinion, *supra*. Those specific allegations relate to sufficiency and thus we discuss them together here.

The record before us shows that shortly after 11 o'clock p.m. on April 11, 1976, Indianapolis police were called to the home of one Vivian Boyce in the city of Indianapolis, and upon arrival found a black male lying on the front porch of the residence, apparently dead. It was later determined that the victim died from a .38 caliber bullet wound in the chest. Vivian Boyce was the girlfriend of the deceased, David Williams Jr. She was employed as a go-go dancer at the Silver Dollar Saloon at 34th and Arlington streets, which was partially owned by the victim's father, David Williams Sr. The victim, David Williams Jr., also worked part time at this saloon.

Several witnesses testified that on the day previous to the killing, April 10, 1976, the victim and appellant Bryant were involved in a fight at the Silver Dollar Saloon. After the fight was broken up by several of the men in the saloon, including the bartender, Barry Cole, and David Williams Sr., appellant was quoted as telling the victim, "I'm going to get

you for this nigger." Vivian Boyce testified that appellant came to her home at about 10:30 p.m. on the night of the 11th, and demanded to know where David Williams Jr. was. She refused to tell him anything and asked him to leave. As he was leaving, there was a knock at the door. When she opened the door David Williams Jr. was standing there. Appellant pushed her out of the way and went on to the porch. An altercation ensued between the two men, and Vivian said she saw the appellant fire a gun at the decedent at close range and that the decedent screamed and fell. She said it was dark and she could not see the gun so as to be able to give any detail about it, but that she could see the general shape of the gun and saw the flame emit from it as it fired. Appellant immediately left the scene in a blue Volkswagen which belonged to his sister and which he often drove. The gun was never found. Appellant was arrested by officers, two to three hours later, at the home of his sister.

Appellant's version of the incident is that he was fighting with the decedent when he became aware that there was someone else behind him because of a statement made by the decedent. Then, appellant claimed that he jumped out of the way, and that this third person behind him fired a gun that killed the decedent and then ran off along the side of the house into the darkness. Vivian Boyce testified that there is a brick bannister around the porch, that there was no one on the porch except the decedent and the appellant, and that she saw the appellant fire the gun at close range into the decedent.

Cases cited by the appellant, to sustain his position on the sufficiency question, are those in which the state presented either only circumstantial evidence or evidence in which the lone witness testified in a relatively weak or incredibly ridiculous manner. *Gaddis* v. *State*, (1969) 253 Ind. 73, 251 N.E.2d 658; *Manlove* v. *State*, (1968) 250 Ind. 70, 232 N.E.2d 874; *Ritchie* v. *State*, (1963) 243 Ind. 614, 189 N.E.2d 575; *Osbon* v. *State*, (1938) 213 Ind. 413, 13 N.E.2d 223. The holding in those cases was not that the testi-

mony of a lone witness for the state is insufficient to establish guilt beyond a reasonable doubt. Rather, because of the weakness of the testimony in these cases, there was not substantial evidence of probative value from which a jury could reasonably find or infer the existence of each material element beyond a reasonable doubt. Consistent with our general principles of review of sufficiency of the evidence, this court has also found that a conviction may be sustained solely upon the testimony of one witness. *Beard* v. *State,* (1975) 262 Ind. 643, 323 N.E. 2d 216; *Smith* v. *State,* (1971) 255 Ind. 687, 266 N.E.2d 216.

Here, Vivian Boyce testified as a direct on-the-scene eyewitness. Appellant himself corroborates her testimony as to his being at the scene and as having had an altercation with the victim on the porch, as Vivian Boyce had described it. Appellant's testimony conflicts with hers on matters of conversations had between the two of them before the victim arrived, and as to the firing of the gun by him rather than by some unknown third person. The facts that Vivian Boyce was a go-go dancer, that she worked in the bar partially owned by the father of the victim, and that she was the girlfriend of the victim were all known to the jury, as they were testified to by her and other witnesses in the case. It is the jury's function to weigh conflicting evidence or uncontradicted evidence from which conflicting yet reasonable inferences may be drawn and then to determine whether such evidence excludes every reasonable hypothesis of innocence. This court does not judge the credibility of witnesses nor weigh evidence, but rather looks to the evidence most favorable to the state and the reasonable inferences to be drawn from that evidence. If there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be overturned. *Sypniewski* v. *State,* (1977) 267 Ind. 224, 368 N.E.2d 1359; *Maxey* v. *State,* (1976) 265 Ind. 244, 353 N.E.2d 457. The evidence in this case was sufficient to support appellant's conviction.

The judgment of the trial court is affirmed.

All justices concur.

NOTE.—Reported at 376 N.E.2d 1123.