Roy A. SMITH, Appellant,

v.

STATE of Indiana, Appellee.

No. 1082S395.

Supreme Court of Indiana.

Sept. 18, 1984.

Rehearing Denied Nov. 17, 1984.

Roy A. Smith, in pro. per.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deptuty Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Roy A. Smith was found guilty by a jury in the Marion Superior Court, Criminal Division 5, of the crime of murder and was also found to be a habitual offender. He subsequently was sentenced to a term of ninety (90) years by the trial judge.

The following eight issues are presented for our consideration in this direct appeal:

1) admission of alleged hearsay testimony;
2) sufficiency of the evidence;
3) improper admission of a gun into evidence;
4) exclusion of cross-examination of State's witness;
5) refusal of Defendant's lesser included offenses instructions;
6) failure to properly instruct the jury;
7) accumulation of errors at trial requiring reversal; and
8) improper sentencing.

The facts show that victim Joe Idlett was found in a dead-end alley off Tacoma Avenue in the city of Indianapolis, Indiana, with a gunshot wound to his head that caused his death. There was a pool of blood around his head. This occurred on July 22, 1981. On that date, at approximately 9:00 p.m., defendant Roy Smith left his home driving his girlfriend's 1969 light green Mustang automobile. A friend of Defendant's was at his home and said Defendant took with him a Smith and Wesson .38 handgun. At approximately 8:30 p.m., on that date, Henry Emerson and John Emerson, both cousins of the victim,

met the victim at the corner of 28th and LaSalle Streets in Indianapolis, near the victim's home. They were later joined at that corner by Larry Burroughs. All three witnesses testified the victim told them that he, Idlett, was meeting with defendant Smith and that they were going to commit a robbery. Smith was to have a gun and the proceeds of the robbery were to be used for Smith to pay the victim a debt of $250.00. The Emersons left to get some wine and did not return to that corner until about 10:30 p.m., when all the other persons were gone. Burroughs remained there with Idlett, however, and stated that defendant Smith did come to the corner in a light green Mustang automobile and picked up victim Idlett. Idlett and Smith left together in the green Mustang. At about 9:20 p.m., on that same date, Marvin Golden was walking home near the dead-end alley where the victim's body was found and saw a lime green Mustang drive into the dead-end alley some distance ahead of him. When he arrived at the alley, the light green Mustang rapidly backed out of the alley, almost striking Golden. The Mustang backed into the street and left rapidly. Golden could not absolutely identify the driver of the Mustang but stated that the driver resembled the defendant. He was certain of the color of the car, the configuration of the taillights, and the 1981 license plates, but he could not discern the license number. About 10:00 p.m., the body of Idlett was found in the alley and police were called. The defendant arrived back at his home about 9:30 p.m., with the gun. He shortly thereafter left with the gun. An autopsy revealed the victim died as a result of a gunshot wound to the right temple. Charles Caine, a firearms expert, testified that it was his belief that the bullet was fired by a Smith & Wesson .38 handgun.

I

■ Appellant claims he was prejudiced by the admission into evidence by several State's witnesses that the victim had told them he was meeting the defendant that night and that he and the defendant had planned to commit a robbery. The witnesses testified further that the victim indicated the defendant was to have a gun and that the defendant was to repay the victim a $250.00 debt from the proceeds of the robbery. Defendant claims this was hearsay which was very prejudicial to him. However, the State specifically stated that this evidence was not being admitted to prove the truth of what the victim had said, i.e., that he and the defendant intended to commit a robbery that evening, but to show that the statement was made and to place the victim and the defendant together. The purpose of the testimony was to support witness Burroughs' statement that the victim and the defendant did, in fact, meet and leave together. Not only was there an absence of testimony regarding the occurrence of a robbery, but the testimony revealed that no robbery did, in fact, take place. The trial court found that the admission of the victim's statements was not hearsay because it was admitted not to prove the truth of the statement, but to show the victim's intended course of action. If an out-of-court statement is offered into evidence only as proof of making the statement and not as proof of the matter asserted therein, the testimony as to the out-of-court declaration is not barred by the hearsay rule. *Bean v. State*, (1978) 267 Ind. 528, 371 N.E.2d 713 *reh. denied; Nuss v. State*, (1975) 164 Ind.App. 396, 328 N.E.2d 747.

In *Southard v. State*, (1981) Ind.App., 422 N.E.2d 325, *trans. denied*, the Court of Appeals found that where Defendant's proffered testimony concerning drug activity of the victim while in Miami was not offered to prove the truth of victim's account of his experiences in Miami, but rather to show what victim had said to defendant, the testimony was not inadmissible on grounds it was hearsay. Southard, the defendant, was making a claim of self-defense and the Court of Appeals found that he had a right to put into evidence all facts indicating or showing he had reason to fear victim Cicco so as to support his defense. Therefore, the Court of Appeals held,

based on *Nuss, supra,* and *Gunn v. State,* (1977) 174 Ind.App. 26, 29, 365 N.E.2d 1234, 1238, that testimony of Cicco's drug dealings in Miami, Florida, would be admissible where it was not offered to prove the truth of Cicco's account of his experiences in Miami, but rather to show what Cicco had said to Southard and justify his apprehension of harm. *See also, Bell v. State,* (1977) 267 Ind. 1, 366 N.E.2d 1156.

■ We find the trial court did not commit reversible error by recognizing a similar position in the State here and by permitting the witnesses to testify about statements made to them by the victim regarding the victim's intended plan with the defendant that night. We recognize that the statement also implicitly contained the victim's declaration that he intended to meet with Defendant that night and that this part of the statement was proved by the declarations of the victim, Idlett. However, the evidence shows that witness Burroughs, in addition to testifying as to the statement of Idlett, actually saw the defendant, whom he knew personally, meet with Idlett and leave with him in the green Mustang. Both of the Emersons, who also testified as to statements made by Idlett, were on the street corner and left Burroughs and the victim shortly before the defendant arrived. Witness Robert Johnson also testified that the defendant left home with a loaded .38 caliber Smith & Wesson handgun just prior to the time he met the victim. The trial court permitted the witnesses to testify as to the statements of Idlett and refused an admonition to the jury, but suggested to Defendant that he tender a final instruction to cover the issue. The defendant did not do so. Eyewitness testimony placed the defendant with the handgun and further placed him in the company of the victim very close to the scene and time of the victim's death. Therefore, the prejudicial effect of the out-of-court statements was minimal because it was cumulative in nature. The street corner where Defendant and victim were observed in the green Mustang was about a five minute drive to the alley where the victim's body was found. There was, therefore, no reversible error on this issue.

## II

■ The Appellant next claims there was insufficient evidence to support the jury's verdict of guilty of murder. He contends there was not sufficient evidence of probative value to support the verdict. The standard of review at the appellate level has been so often stated that we need not repeat it here. *Loyd v. State,* (1980) 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Smith's claim of insufficiency is based on the fact that all of the evidence tending to indicate he is the one who murdered the victim, is circumstantial. It is not necessary that this Court find the evidence excludes every reasonable hypothesis of innocence but rather it need only be demonstrated that inferences may reasonably be drawn which support the finding of guilt by the jury. *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70. Here the testimony of the witnesses placed the defendant and victim together in the Mustang automobile very shortly before the death and a short distance from the alley in which Idlett was found slain. Appellant was observed to have had a .38 caliber Smith & Wesson, fully loaded, on his person and expert testimony suggested a Smith & Wesson .38 caliber handgun was used in the crime. The vehicle was described by several witnesses and had a rather unusual and distinctive color. All witnesses testified it was a light or lime green Ford Mustang and, although the testimony conflicted as to the year of the model, the description of the formation of the taillights and other features of the vehicle matched. Though the convicting evidence was circumstantial, there were sufficient facts before the jury from which they could reasonably find or infer that the defendant was guilty of murder as charged. Therefore, no reversible error is presented to us on this issue.

## III

Smith was arrested on July 27, 1981, while driving his automobile. Also present

in the passenger seat was his girl friend, Vicky Warren, the owner of the green Mustang referred to above. In her possession was a purse, which was open, and in it the arresting officer could see a pistol. He confiscated this weapon and determined it was a .38 caliber Smith & Wesson. On examination it was determined this weapon was not the one that fired the fatal shot into Idlett's temple. Vicky Warren did not have a permit to carry the weapon and she was arrested at the scene on those grounds. State's witnesses testified as to these circumstances of the arrest and the confiscation of the .38 Smith & Wesson from Vicky Warren. They also testified that examinations of the weapon showed that it was not used in the murder of Joe Idlett. They further testified that no bloodstains were found on the gun and tests made on spots taken from within the Mustang automobile revealed that these spots were not human blood. The State then offered this weapon into evidence and the court admitted it over objection.

█ Appellant contends it was prejudicial error to admit the weapon taken from Vicky Warren into evidence since this was not the murder weapon and could only prejudice the defendant. The State, however, claims it was proper to admit the gun into evidence since it was incident to Defendant's arrest and therefore was relevant to show the course of the investigation as well as the thoroughness of the investigation by the police. Furthermore, it supported the credibility of the State's witnesses by showing their willingness to bring forward evidence even when it was negative to their position of Defendant's guilt. The trial court found the gun was relevant because it was obtained in the officer's investigation, and was connected to the defendant since it was obtained during his arrest. Furthermore, the weight to be given the gun could be decided by the jury. The trial court stated that the State's responsibility in presenting its case encompasses not only the production of all evidence of positive worth to the State's case, but also all evidence of a negative nature as well. He felt that the determination

that this particular gun was not the one that was used in the murder, as well as the exhibits indicating there were no blood stains in the Ford mustang or on this gun, were part of the investigation and were properly presented to the jury. It is apparent, of course, that this function would have been fulfilled by the testimony of the State's witnesses without actually admitting the weapon into evidence. The admission of the gun into evidence as an exhibit in the case was of little probative value and was nothing more than redundancy. However, we do not discern any prejudice to the defendant as a result of its admission. Defendant did not object to the testimony of the State's witnesses that the gun was found in possession of Vicky Warren at the time of the arrest, that it was examined and determined not to be the murder weapon, and that this was all incidental to Defendant's arrest. His only objection was to its admission into evidence. Since the admission of the weapon did not prejudice the defendant in any material way, we find no abuse of discretion that merits reversal.

IV

█ Smith claims he was unduly restricted in cross-examining witness Larry Burroughs regarding his bias and his interest in testifying. Burroughs had been convicted of first degree burglary in 1975. In June, 1981, Burroughs was charged with robbery and confinement, both class B felonies. This action against Burroughs had been continued four or five times without objection by the State and the charges were still pending at the time Burroughs testified in the instant case. Burroughs' initial bond was set at $30,000.00, but after he gave police a statement against Smith his bond was lowered to $7,500.00 by agreement with the State. Burroughs testified on direct examination that he had received no favorable treatment from the State in return for his testimony, that there was no connection between his testimony and any anticipated favorable treatment, and that he had not been pressured into giving testimony by virtue of his being

incarcerated. The deputy prosecutor trying the cause offered to testify and to further submit Detective Layton on the witness stand in support of the witness' statement regarding the fact that he had been promised no favorable treatment in exchange for his testimony. Smith was allowed to examine Burroughs outside the presence of the jury. Burroughs then testified that there was no connection between his pending criminal charges and his testimony against Smith, and he was not expecting any favorable treatment because of his testimony. Smith still insisted on pursuing the matter further on cross-examination by inquiring into the charges against Smith and the disposition of them. The trial court found that since there had been nothing shown by the witness or anything else produced by the defense to show there had been any consideration given to the witness for his testimony, there would be no point in pursuing the matter further. We see no abuse of discretion here that resulted in prejudice to the defense. Burroughs testified there was no offered or expected special treatment, and the jury had before it all of the facts of Burroughs' situation with the attendant credibility of the witness. Having all of those same facts with the same answers restated to the jury would not have added anything to the defendant's case, and the lack of them presented no prejudice to him.

### V

■ Defendant next complains his tendered final instructions on lesser included offenses were improperly rejected by the trial court. In reviewing an issue concerning the refusal of an instruction, this Court must consider whether the tendered instruction is a correct statement of the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions given. *Richey v. State*, (1981) Ind., 426 N.E.2d 389; *Davis v. State*, (1976) 265 Ind. 476, 478, 355 N.E.2d 836, 838. The trial court here stated there was no factual basis in the record for the defendant's tendered instructions.

The trial court was correct in this finding. The victim's body was found in an alley with a fatal bullet wound in his temple caused by a .38 caliber Smith & Wesson pistol. Defendant was charged by the State with murder and there was no evidence offered by either party that would tend to show the homicide was committed in a manner that would demonstrate one of the lesser included offenses such as manslaughter. Furthermore, the defense of defendant Smith was not that the act was committed in a manner matching the description of a lesser included offense, but was that he was not the person who committed the crime. There was therefore no evidence in the record to support the giving of instructions on lesser included offenses and the trial court properly refused the tendered instructions.

### VI

■ Defendant next claims the trial court did not give a final instruction on presumption of innocence and a definition of reasonable doubt. The State claims this issue was waived by the defendant and we agree. Defendant admits that proper instructions on presumption of innocence and reasonable doubt were given in the preliminary instructions. In its final instructions the court gave final instruction No. 1, which was: "The court has previously given you your preliminary instructions on certain matters of law which were to be considered during trial, and now gives you your final instructions on the law which are to be considered along with the preliminary instructions in arriving at your verdict."

■ The defendant did not object to instruction No. 1, did not request a re-reading of the preliminary instructions, and did not tender a proposed alternative instruction that would again have given the jury the instructions he now claims were omitted. Smith admits he did not raise the question at the time the court gave the final instructions but claims it was fundamental error for the court to instruct the jury in the manner it did even without his

objection. We see no merit to this contention. In considering a contention of fundamental error, we consider the character of the error and its effect on the trial as a whole together with the consideration of the function of the proper objection requirement. *Roberts v. State,* (1981) Ind. App., 419 N.E.2d 803, 807, *citing Grimes v. State,* (1976) 170 Ind.App. 525, 534, 353 N.E.2d 500, 507, *reh. denied.* Here, the jury was instructed in preliminary instructions 5 and 6 on the subjects of presumption of innocence and reasonable doubt. They were reminded during final instructions by final instructions No. 1 that they were still bound by the preliminary instructions. Had the defendant raised the issue at this time, the trial court easily could have remedied the situation by re-reading preliminary instructions 5 and 6 or any other instructions tendered by the defendant. There was, therefore, no fundamental error committed by the trial court in the instructions given to the jury.

## VII

■ Defendant now alleges that the accumulation of errors he has raised in this appeal constitutes a violation of due process even if we should find one or some of them was non-reversible error. Defendant cites to *Collins v. State,* (1975) 163 Ind. App. 72, 321 N.E.2d 868, *reh. denied,* to support his contention that the errors constitute reversible error by their accumulated weight. As we have shown, by considering each of the allegations of error up to this point, there is no showing Defendant was prejudiced in any manner by any of the alleged errors. Therefore, taken together, they do not demonstrate a violation of his rights to due process of law.

## VIII

■ Finally, defendant Smith claims his sentence is manifestly unfair by being excessive for the crime for which he was convicted. He was sentenced to a term of sixty (60) years for the crime of murder and that sentence was enhanced by thirty (30) years on a finding that he was a habit-

ual criminal. Ind.Code § 35-50-2-3 (Burns Repl.1979) provides for a forty (40) year sentence for murder with no more than ten years subtracted for mitigating circumstances or twenty (20) years added for aggravating circumstances. The trial court on the record indicated it had considered the sentencing guidelines of Ind.Code § 35-4.1-4-7 (Burns Repl.1979) and had found no mitigating circumstances. Defendant does not now claim there are any mitigating circumstances that the court should have considered. As aggravating circumstances the trial judge found Defendant was in violation of federal parole when he committed this crime of murder, that he had a long criminal history over and above the prior felonies for which he was found to be a habitual offender, and that Defendant was in need of correctional or rehabilitative treatment that could best be provided in a penal institution. He further found the imposition of a lesser sentence would tend to depreciate the seriousness of the crime. Any one of these aggravating circumstances would have been sufficient to justify the trial court in enhancing the forty (40) year sentence to sixty (60) years as he did. *Logsdon v. State,* (1980) Ind., 413 N.E.2d 249. Ind.Code § 35-50-2-8(a) (Burns Repl.1979) provides for enhancement of the basic sentence thirty (30) years when a person is found to be a habitual criminal. The trial court therefore properly followed sentencing statutes in imposing the sentences he did on this defendant and properly gave his reasons in the record for doing so pursuant to Ind. Code § 35-4.1-4-7 (Burns Repl.1979). No reason is presented to us to find the sentences are inherently unreasonable considering the nature of the offense and the character of the offender.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.