**Robert Lee JACKSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1285S501.**

Supreme Court of Indiana.

April 6, 1988.

**340**

William F. Thoms, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis for appellee.

DeBRULER, Justice.

This is a direct appeal following conviction for the crimes of robbery and confinement. Appellant was also determined to be an habitual offender. He was sentenced to 20 years for robbery, which was later enhanced by 30 years due to the habitual finding, and to 20 years for confinement, the sentences to run consecutively.

There are five issues presented for review: (1) whether the trial court erred in not suppressing identification testimony; (2) whether the trial court erred in not giving an instruction on theft as a lesser included offense of robbery; (3) whether the trial court erred in not giving a tendered instruction on the weight to be given appellant's testimony; (4) whether the trial court erred in not giving a tendered instruction on the weight to be given an accomplice's testimony; and (5) whether the trial court erred in resentencing appellant.

These are the facts from the record pertinent to this appeal: On December 31, 1984, Carol Furnish was working in the office in the clubhouse of Bent Tree Apartments. At approximately 10:00 a.m., during daylight hours, appellant and another man entered the clubhouse and appellant asked Furnish for change. When she informed him there was no money on the premises, both men left. Appellant immediately returned with a knife and demanded Furnish's purse, which she produced. He then grabbed her wrist and forced her into the women's restroom where he ordered her to lie on the floor. She asked if she could kneel instead and he acquiesced. While she was kneeling, she saw appellant's

hands come from behind her toward her face and jumped up and ran screaming from the clubhouse. Outside she told an apartment resident, Sam Speechly, what had happened. Both saw appellant run out of the clubhouse with Furnish's purse. Speechly followed him and saw him get in a car with another individual. Speechly then returned to the clubhouse, saw the car drive by, and wrote down the license number. He did not see appellant in the car at that time. Speechly and Furnish called police and gave them a description of the men and the license plate number of the car.

A short time later police located the car and arrested Gibson, the man with the car. They also arrested appellant, who was across the street, after Gibson indicated appellant was involved in the incident which occurred at the apartment clubhouse. Furnish and Speechly were then brought to the scene and both identified the men in a show-up procedure.

The jury found appellant guilty of robbery and confinement but was unable to reach a decision on the habitual offender count and the judge declared a mistrial of that phase of the trial. Appellant was sentenced to twenty years each on the robbery and confinement convictions, sentences to run consecutively, on July 12, 1985. He was retried on the habitual offender allegation on Sept. 26, 1985, and the jury determined that he was an habitual offender. He was resentenced on Oct. 10, 1985, to fifty years for the robbery and twenty years for the confinement, sentences to run consecutively.

## I

Carol Furnish and Sam Speechly identified appellant in a one-on-one show-up approximately five minutes after the incident. Appellant contends that due to the impermissible nature of the show-up, the trial court erred when it denied his motion to suppress their identification testimony.

 The display of a putative victim to a suspect in custody, without staging a line-up, does not always result in suppression of identification testimony. If there is a sufficient independent basis for the in-court identification, then it will be permitted notwithstanding the improper pre-trial procedure. *Remsen v. State* (1981), Ind., 428 N.E.2d 241. When considering whether there is an independent basis, the factors to be considered are the witnesses' opportunity to view the criminal when the crime was committed, the degree of attention at the time, the accuracy of the prior description, the level of certainty in the pre-trial identification and the length of time between the crime and the identification. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

 In this case Furnish observed appellant once while she did not feel threatened and again later during the robbery and confinement. She gave a very detailed, accurate description of appellant and positively identified him in person approximately five minutes after the crime. Speechly was informed of what had just occurred and then saw appellant run from the building. He followed him, saw him enter a car, and subsequently saw the license plate on the car. The license plate number he gave police was accurate as was his description. This is adequate to support the trial court's determination that the witnesses had a sufficient independent basis for their in-court identification of appellant.

## II

The trial court refused appellant's tendered final instruction defining the lesser included offense of theft. Appellant asserts that as the instruction was a correct statement of the law, evidence supported the giving of the instruction and no other instruction covered the offense of theft, the trial court was in error when it refused to give this instruction to the jury.

 While the criteria enumerated by appellant are requirements necessary for the giving of an instruction, there is in addition a requirement that there be evidence from which the jury could find that the lesser, but not the greater, offense was committed. *Tawney v. State* (1982), Ind., 439 N.E.2d 582. Theft is defined by I.C.

35–43–4–2 as knowingly or intentionally exerting unauthorized control over property of another with the intent to deprive that person of its use or value. Robbery is defined by I.C. 35–42–5–1 as knowingly or intentionally taking property from another by the use or threat of force or by putting such person in fear.

In the case before us, if the jury determined that appellant was the responsible party, there was no evidence from which the jury could determine that theft, but not robbery, occurred. Appellant was armed with a knife, forced Furnish into the restroom, attempted to restrain her and took her purse. She testified she was in fear. This evidence supports the greater offense of robbery and the trial court did not err in its refusal to instruct the jury on the lesser included offense of theft.

### III

■ Appellant contends the trial court erred by refusing his tendered instruction # 3. The substance of that instruction was that appellant's testimony should not be disbelieved solely because he was the accused. It also addressed how the jury should weigh appellant's testimony. This court has held several times that it is not error to either give this type of instruction or to refuse it. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102. *Taylor v. State* (1976), 265 Ind. 433, 355 N.E.2d 247. There is no error.

### IV

■ Appellant's instruction # 4 dealt with the credibility to be given the testimony of an accomplice. The trial court refused the instruction over appellant's objection.

"An instruction in a criminal case is erroneous, as an invasion of the province of the jury, if it intimates an opinion of the credibility of a witness or the weight to be given to his testimony. *Swanson v. State* (1944), 222 Ind. 217, 52 N.E.2d 616; *Alder v. State* (1958), 239 Ind. 68, 154 N.E.2d 716."

*Taylor v. State* (1972), 257 Ind. 664, 278 N.E.2d 273.

Preliminary instruction # 5 generally informed the jury of the factors it should consider in judging the credibility of all witnesses. The application of the general instruction to particular witnesses is a matter for the legal act of jury summation.

### V

■ Appellant was tried and convicted of the crimes of robbery and confinement on June 17, 1985. Following the conviction, the jury was presented with the question of whether or not appellant was an habitual offender. They were unable to reach a verdict on that issue and a mistrial was declared. At that time, the trial judge set the sentencing hearing for the robbery and confinement convictions for July 12, 1985, and also set the habitual offender retrial for July 25, 1985. Appellant was sentenced to 20 years for the robbery and 20 years for the confinement, sentences to run consecutively, on July 12, 1985. Following several continuances, appellant was eventually retried on the habitual offender count on Sept. 26, 1985. The jury found that appellant entertained that status and on Oct. 10, 1985, the trial court resentenced appellant to 20 years for robbery, enhanced by 30 years due to the habitual determination, and to 20 years for confinement, sentences to run consecutively. Appellant at no time objected to retrial of the habitual offender phase occurring after he had been sentenced on the underlying offenses.

Appellant contends that the double jeopardy clause was violated by the resentencing.

"It was previously widely held that commencement of service of the sentence restricted the trial court's power to correct or amend a sentence. See, e.g., *United States v. Turner*, 518 F.2d 14 (7th Cir.1975); *United States v. Sacco*, 367 F.2d 368 (2d Cir.1966). The premise underlying this rule was that a sentence, once imposed, was to be accorded the finality of a jury verdict and could not be increased without placing the defendant twice in jeopardy. The imposition of a sentence, it was reasoned, was tantamount to a verdict of acquittal on the

possibility of greater punishment. Increasing the punishment placed the defendant twice in jeopardy with respect to the greater punishment. See *United States v. Benz*, 282 U.S. 304, 307, 51 S.Ct 113, 114, 75 L.Ed. 354 (1931)." *United States v. Jefferson*, 714 F.2d 689 (7th Cir.1983).

Using this analysis, it would constitute double jeopardy to resentence appellant to reflect the habitual offender determination. However, as *Jefferson* goes on to note, in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Supreme Court rejected the approach that a criminal sentence, once imposed, should inevitably be accorded the same constitutional finality that attaches following acquittal.

The Supreme Court emphasized that the double jeopardy clause protects the "legitimate expectations" of a defendant regarding the length of his sentence. The Court noted that since defendant was charged with knowledge of the statute and its appeal provisions, the defendant had no legitimate expectation of finality. *DiFrancesco, supra.* Similarly, a majority of this court adjudges that appellant had no legitimate expectation of finality at the time he was originally sentenced on July 12, 1985. Following the mistrial, the judge scheduled the sentencing and also scheduled the retrial for two weeks after that. Appellant made no objection at that time, on the sentencing date, at the habitual offender retrial or at the resentencing hearing. He clearly understood that should an habitual offender determination be made upon retrial, his original sentence was subject to enhancement.

The author of this opinion holds to a contrary opinion on this issue. According to the cases as I read them, a legitimate expectation of finality is not an actual state of mind, but is instead, a state of mind deemed to exist in legal contemplation because of the existence of a particular state statute or law. There is no Indiana statute or law which sanctions the post-sentence procedures announced by and followed by the trial judge below which led to the second enhanced sentence eighty-eight days after appellant commenced service of his first and lawful sentence. Hence, as I see it, the finality of appellant's first sentence is mandated by the double jeopardy clause. The majority however, holds to the contrary.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

GIVAN, J., concurs in result.