Estell **CRABTREE**, Appellant
(Defendant Below),

v.

**STATE of Indiana** Appellee
(Plaintiff Below).

No. 33A01–8901–CR–00023.

Court of Appeals of Indiana,
First District.

Dec. 7, 1989.
Transfer Denied March 15, 1990.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Estell Crabtree appeals his conviction of child molesting, a class C felony. We affirm.

Crabtree presents the following issues for review:

(1) whether he was prejudiced and denied a fair trial by the admission of evidence that he engaged in sexual activity with a stepdaughter over twenty years earlier;

(2) whether the verdict is supported by sufficient evidence or contrary to law;

(3) whether the trial court erred by refusing Crabtree's final instructions numbered 1, 2, 5 and 6; and,

(4) whether the trial court erred by refusing to permit Crabtree to act as cocounsel at trial.

## I.

Crabtree argues that evidence he molested a stepdaughter over twenty years before he allegedly committed the acts at issue in this case was too remote to raise a reliable inference he did it again, and whatever probative value it had was outweighed by its prejudicial impact and likelihood of tainting the fairness of the trial.

Crabtree acknowledges that in sodomy, incest and child molesting cases, proof of a defendant's prior uncharged sexual offenses is admissible, subject to exclusion in the discretion of the trial court for remoteness, to demonstrate that a defendant possesses a depraved sexual instinct. *Lehiy v. State* (1986), Ind.App., 501 N.E.2d 451, *affirmed*, 509 N.E.2d 1116. Crabtree also acknowledges that prior acts committed as many as thirty years before have been held not too remote for admission. *See, e.g., Lawrence v. State* (1984), Ind., 464 N.E.2d 923 (twenty-two years); *Dockery v. State* (1987), Ind.App., 504 N.E.2d 291 (seventeen to thirty years). Nonetheless, Crabtree urges us to adopt the rationale of the Indiana Supreme Court in *Clark v. State* (1989), Ind., 536 N.E.2d 493, a drug case involving the common scheme or plan exception to the general rule precluding admission, and apply the same reasoning to the facts of this case. Crabtree maintains that a reliable, probative correlation cannot be made between sexual misconduct occurring ten, twenty or thirty years ago and a charged child molesting offense. In cases where the evidence is extremely remote, Crabtree argues that the inference becomes solely the impermissible one prohibited by the general rule, namely, that having committed a crime once he has done so again.

We observe however that in *Clark* the court held not that the prior acts were too remote to be admissible, but that they

were both too remote *and* too dissimilar to be *relevant* evidence of a common scheme or plan. The court reiterated that to be admissible as evidence of a preconceived plan which includes the charged crimes, the crimes must be so related in character, time and place of commission as to establish some plan which embraces *both* the prior criminal activity and the charged crime. 536 N.E.2d at 494. The common scheme or plan exception requires that the uncharged crime be tangibly connected to the one for which the defendant is on trial. Without some *nexus,* the evidence would wrongly impugn the defendant's character without being probative of a material fact. *Id.*

■ Under the depraved sexual instinct rule, however, the need for distinctive similarity between the two acts is relaxed because the rule recognizes not a single criminal plan but a disposition or proclivity toward certain sexual conduct *in continuando* in nature such that it is highly probable the emotional or mental disposition exhibited with respect to certain acts before has continued to the time of the act charged. *See, Lehiy, supra* at 455; *Pieper v. State* (1975), 262 Ind. 580, 321 N.E.2d 196, 198; *State v. Robbins* (1943), 221 Ind. 125, 46 N.E.2d 691, 695. The theory of this exception is that as the disposition of the accused at the time of the act charged is relevant, evidence that at some prior time he was similarly disposed is also materially relevant, *Bracey v. State* (D.C.Cir.1944), 142 F.2d 85 cited with approval in *Pieper, supra,* and of strong probative force since evidence of an earlier disposition makes it antecedently probable that a given future event will occur. *See, State v. Markins* (1884), 95 Ind. 464, 465.

Evidence of an earlier sexual offense has also been admitted on the theory that such evidence serves to bolster the credibility of the prosecuting witness in situations where the accusations or acts seem unnatural or improbable standing alone, and the witness is not likely to be believed. *Stwalley v. State* (1989), Ind., 534 N.E.2d 229, 231;

*Wyrick v. State* (1989), Ind., 533 N.E.2d 118, 120; *Grey v. State* (1980), 273 Ind. 439, 404 N.E.2d 1348, 1352; *Pieper v. State, supra* 321 N.E.2d at 199. *Cf., also, Borolos v. State* (1924), 194 Ind. 469, 143 N.E. 360 (evidence of prior sexual offenses competent to explain witness's passive participation and silence and to rebut inference that story told too improbable to be true).

■ The testimony offered against Crabtree showed that the victim of the earlier incident was Crabtree's stepdaughter from a former marriage, that he began fondling her when she was seven or eight, and that he tried to have sexual intercourse with her when she was about ten. He succeeded in having sexual intercourse with her when she was thirteen or fourteen and in addition forced her to have oral and anal intercourse.[1] As with the victim of the charged offense, Crabtree threatened to kill her if she told anyone. Her mother did not believe her when the earlier victim reported the instances to her. Given the differences in rationales, in particular, that a depraved sexual instinct is perceived to be continuous in nature, and the similar circumstances involved, we are unwilling to hold that the admission here of evidence of acts occurring from twenty-two to thirty years earlier is so lacking in probative value as to constitute an abuse of discretion and prejudicial error.

## II.

■ Crabtree makes a two-part sufficiency argument. First, he argues the verdict is not supported by sufficient evidence because the State failed to prove that the alleged act of deviate sexual conduct occurred at a time the victim was not yet sixteen years old. Second, Crabtree contends the evidence that Crabtree had "anal intercourse" with the victim is insufficient to establish Crabtree accomplished penetration.

Although admittedly the testimony of the various witnesses is at times inconsistent with one another and may also be internal-

---

1. The victim of the charged offense, also Crabtree's stepdaughter, testified that she was eleven or twelve when Crabtree first attempted to have sex with her.

ly inconsistent, we find credible evidence establishing that the victim was at least twelve years of age but under sixteen years of age at the time the act of deviate sexual conduct occurred. The victim's date of birth was not established. However, she testified that at the time her mother married the defendant in 1972, she was three years old. Necessarily then, she would have turned sixteen in 1985 and the relevant years would be 1981–1985. The victim testified that she was 15 at the time the alleged act of deviate sexual conduct occurred (R. 256) but did not tell her mother ·about the ongoing sexual relationship with the defendant until the end of May, 1985. Officer Jackson, who took the victim's statement on May 29, 1985, testified that the victim was 15 at that time. Finally, the victim's mother indicated that her divorce from the defendant was final in 1984 but that she first filed for divorce in 1982. The victim testified that the incident involving anal intercourse occurred during a period when the defendant and her mother were back together after a period of separation. Apparently, the victim's mother and the defendant separated and re-united numerous times before the final separation in 1984.

Crabtree acknowledges that convictions for child molesting may be sustained on the uncorroborated testimony of the victim. *Tuggle v. State* (1986), Ind., 457 N.E.2d 1094, 1096–1097. Minor inconsistencies in the victim's testimony go the witness's credibility which is for the trier of fact to determine. *Id.* The victim stated she was 15 when the act occurred. Her testimony is substantiated by that of Officer Jackson. We conclude the determination that she was between the ages of 12 and 16 is supported by sufficient evidence. *Cf., Mahla v. State* (1986), Ind., 496 N.E.2d 568; *Wilson v. State* (1988), Ind.App., 521 N.E.2d 363, *trans. denied.*

Crabtree also argues that the evidence he had anal or rectal intercourse with the victim is insufficient to establish pen-

etration. Among the cases he cites are *Harding v. State* (1984), Ind., 457 N.E.2d 1098, *cert. denied,* 475 U.S. 1024, 106 S.Ct. 1218, 89 L.Ed.2d 329; *Chew v. State* (1985), Ind., 486 N.E.2d 516 and *Lambert v. State* (1987), Ind., 516 N.E.2d 16, *modified,* 534 N.E.2d 235. The premise of Crabtree's argument is that the State must show actual penetration to sustain a conviction of child molesting by deviate sexual conduct. He relies upon the supreme court's determination in *Harding, supra,* that the evidence was sufficient to show penetration, to substantiate his contention that actual penetration must be established.

We observe that in *Harding, supra* the court did not directly address the question whether an element of penetration was required [2] but cited *Rowan v. State* (1982), Ind., 431 N.E.2d 805 for the proposition that proof of the slightest degree of penetration would be sufficient. The State sought Rowan's conviction of criminal deviate conduct based upon the crime defined in IND.CODE 35–42–4–2*(b)* (Burns 1979 Repl.) which in pertinent part provided that "a person who knowingly or intentionally *causes penetration,* by an object or *any other means,* of the sex organ or anus of another person … commits criminal deviate conduct." (Emphasis supplied.) The circumstantial evidence in *Rowan, supra* was sufficient to support a finding of at least slight penetration based upon evidence of external injury to the deceased victim even though the medical expert found no evidence of spermatozoa and no evidence of internal injury to the victim's sex organ.[3]

Harding's conviction of criminal deviate conduct for events occurring in 1981 is based upon the same statute in all essential respects as the statute used to convict Rowan. We cannot discern from the court's opinion whether in fact Harding was charged pursuant to section (b). Crabtree's child molesting conviction, however, turns upon the definition of deviate sexual

---

**2.** Of like import is *Parrish v. State* (1987), Ind., 515 N.E.2d 516 and *Dinger v. State* (1989), Ind., 540 N.E.2d 39.

**3.** The facts suggest that the external injury might have been accomplished by the use of an object.

conduct existing in 1985.[4] At that time, I.C. 35–41–1–9 provided:

"Deviate sexual conduct" means an act involving:

(1) a sex organ of one person and the mouth or anus of another person; or

(2) the penetration of the sex organ or anus of a person by an object.

■ Our courts had earlier recognized, in dicta, that actual penetration was not necessary to consummate an act of fellatio (fellatio could be accomplished by a touching) and that the deviate sexual conduct definition "an act of sexual gratification involving a sex organ of one person and the mouth or anus of another person" did not require a showing of actual penetration. *See, Knowlton v. State* (1978), 178 Ind. App. 420, 382 N.E.2d 1004, 1009, n. 4; *also, Omans v. State* (1980), Ind.App., 412 N.E.2d 305, *trans. denied.* We believe this conclusion applies with equal strength to the definition contained in I.C. 35–41–1–9(1) (1985 Supp.) because it is apparent from the language of subsection (2) that when the legislature contemplated an element of penetration it expressly so provided. *Cf. also,* I.C. 35–41–1–26 (1985 Supp.) ("sexual intercourse" means an act that includes any penetration of the female sex organ by the male sex organ). Consequently, we disagree with Crabtree's premise that some independent proof of actual penetration necessarily must be made.

■ However, even if some proof of actual penetration is necessary under the facts of this case, we conclude that the testimony Crabtree engaged in anal or rectal intercourse with the victim is sufficient, without any further corroboration of penetration, to sustain the verdict.[5] The victim was nineteen or twenty years old at the time of trial. She was married and had a two-month old baby. Under these circumstances, a reasonable jury could conclude

that the victim understood the meaning of the terms "sexual intercourse" and "anal intercourse" when she used them to describe acts forced upon her by Crabtree, particularly in light of the fact that the other witnesses' reportings of the incidents coincide. *Cf., Altmeyer v. State* (1988), Ind., 519 N.E.2d 138 and *Flinn v. State* (1919), 188 Ind. 531, 124 N.E. 875 with *Riggs v. State* (1956), 235 Ind. 499, 135 N.E.2d 247.

Crabtree maintains the supreme court's decisions in *Chew, supra* and *Lambert, supra* compel a different result in this case. We disagree. In *Chew,* the court held the victim's testimony that the defendant "made love to me from the back" and reports that the defendant had "raped" her insufficient to establish the vaginal penetration necessary to convict of the crime of rape because, even though the victim displayed ample knowledge of the sex organs, she failed to describe the incident with any more certainty than those colloquialisms provide. In addition, her lack of understanding of the terms "vaginal intercourse," "vaginal sex," and "regular, deviate sexual intercourse" raised serious doubts concerning the manner in which she had been violated. Likewise, in *Lambert, supra,* the court held the victim's description "had sex," her equivocation and uncertainty regarding vaginal penetration, and the lack of medical evidence establishing the existence of semen in the victim's vagina required vacation of the defendant's rape conviction.

We view *Chew* and *Lambert* as an indication that the court intends to continue to recognize the vitality of case law which holds that equivocal and weak testimony may not attain the necessary quality of substantive evidence of probative value. *See, e.g., Wims v. State* (1977), 267 Ind. 392, 370 N.E.2d 358; *Bryant v. State* (1978), 268 Ind. 498, 376 N.E.2d 1123. That

---

4. The State brought its charges against Crabtree in October, 1986.

5. The victim testified that she had had "anal intercourse" with Crabtree. Her mother told the jury that her daughter had reported "rectal intercourse" with Crabtree, and Officer Jackson testified that the victim reported incidents of

"anal intercourse" when he questioned her. The State did not attempt to elicit any additional testimony from any of the witnesses regarding the physical aspects of the acts involved or establish the victim's familiarity with terms such as "sexual" and "anal intercourse."

problem does not exist in this case. The victim made a distinction between sexual and anal intercourse as did her mother and Officer Jackson. The victim did not equivocate in her testimony that both types of acts had occurred. Accordingly, we conclude that the holdings in *Chew* and *Lambert* are not applicable, and that the evidence is sufficient to show deviate sexual conduct.

### III.

█ Crabtree contends next that the trial court improperly rejected his tendered final instructions numbered 1, 2, 5, and 6. In reviewing an issue concerning the refusal of an instruction, we consider whether the tendered instruction is a correct statement of the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions given. *Smith v. State* (1984), Ind., 468 N.E.2d 512, 517. Instruction of the jury is within the sound discretion of the trial court and is reviewed only for an abuse of discretion. *Tanner v. State* (1984), Ind., 471 N.E.2d 665, 667.

█ Crabtree's proposed instruction number 1 charged that the law presumes the defendant to be a person of good character; charged the jury to consider the evidence in light of the presumption; charged the jury to determine the weight to be given to such presumption; and, charged that the jury may find the defendant guilty "only if, after considering all of the evidence and the presumption, you find that the State has proven each element of the offense beyond a reasonable doubt." Crabtree maintains that pursuant to *Hitch v. State* (1972), 259 Ind. 1, 284 N.E.2d 783 the instruction correctly states the law. The court in *Hitch* held however that an instruction authorizing the jury to presume the defendant to be of good character would be proper if, and only if it were qualified by an instruction that, though the jury might believe the defendant to be of good character, the presumption could not avail him as a defense or entitle him to an acquittal if after consideration of all the

evidence and the presumption the jury were satisfied of the defendant's guilt beyond a reasonable doubt. The instruction proposed by Crabtree does not make the qualification required by *Hitch, id.* at 790. Crabtree has not demonstrated that the instruction as written is a correct statement of the law nonetheless. Hence, we hold that the trial court did not abuse its discretion in rejecting it.

█ Crabtree's second instruction would have charged the jury to give him the benefit of any reasonable doubt as to the law. Crabtree cites Art. 1 § 19 of the Indiana Constitution, which gives the jury the right to determine the law and the facts, in support of his assertion that the instruction correctly states the law. The court's final instruction adequately advised the jury of its right to determine the law and the facts, particularly when considered with the court's other instructions on reasonable doubt and the presumption of innocence. *See, Jones v. State* (1981), Ind., 425 N.E.2d 128, 133.

█ Crabtree's fifth instruction advised the jury to specifically consider evidence of resentment or anger which some of the State's witnesses might have towards him and to view such evidence with caution. Crabtree acknowledges that the instruction singles out the testimony of particular witnesses for special scrutiny but urges us to reconsider the long-standing rule of this State rejecting such instructions. As the State points out, however, the court gave a lengthy pattern instruction on how to assess witness credibility and to attribute weight to the testimony. Therefore, even if we were to determine Crabtree's instruction to be proper, the court could still in its discretion have rejected the instruction because the matters contained therein were adequately covered by another instruction.

█ By his sixth instruction, Crabtree sought to inform the jury that earlier statements he made which were the same or similar to his testimony in the courtroom were brought to the jury's attention to help it decide whether to believe Crabtree's testimony. The instruction advised that if

Crabtree said essentially the same thing on more than one occasion, it would be reasonable for the jury to believe him. Again, the court properly and completely instructed the jury on assessing witness credibility. Thus, there was no abuse of discretion in rejecting the proposed instruction. *See Jackson v. State* (1988), Ind., 521 N.E.2d 339, 342.

## IV.

Lastly, Crabtree maintains the trial court abused its discretion by denying his motion to act as co-counsel. He argues that given the vagueness of the charge with respect to the dates and times the alleged acts occurred, the only way to discredit the accusations was by demonstrating that the factual circumstances surrounding the allegations were not true, and since he was uniquely knowledgeable about those circumstances, he should have been permitted to cross-examine the witnesses about the incidents.

We find no reversible error in Crabtree's contention. Whether to permit a defendant to act as co-counsel is entirely within the discretion of the trial court as there is no constitutional right to act in that capacity. *Hunt v. State* (1984), Ind., 459 N.E.2d 730, 733. Crabtree has made no showing of what testimony he could elicit which his attorney, with his help, could not. At trial, Crabtree's attorney made a strategic decision not to cross-examine the victim about the details of the incidents but relied instead upon his determination that the State had failed to meet its burden of proof. Upon review, we are not convinced this was a particularly poor strategy. Crabtree has failed to establish the existence of prejudice to his legitimate interests. *Cf., Bradberry v. State* (1977), 266 Ind. 530, 364 N.E.2d 1183 and *Works v. State* (1977), 266 Ind. 250, 362 N.E.2d 144. Hence, we find no abuse of discretion and no reversible error.

Judgment affirmed.

RATLIFF, C.J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, Judge, concurring.

I write separately with respect to Issue I to emphasize that the focus of the depraved sexual instinct exception is on whether the charge *being prosecuted* involves a depraved sexual instinct. *Lehiy v. State* (1986), Ind.App., 501 N.E.2d 451. Because the charge being prosecuted in the present case was child molesting, an act involving depraved sexual instinct, evidence of Crabtree's prior criminal sexual conduct is admissible under the depraved sexual instinct exception to establish his disposition at the time he committed the crime charged. *Lawrence v. State* (1984), Ind., 464 N.E.2d 923; *Allbritten v. State* (1974), 262 Ind. 452, 317 N.E.2d 854. I agree with the majority's determination that the evidence was not so remote as to be inadmissible.

I fully concur as to Issues II, III, and IV.