**Calvin LITTLE, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 385S102.

Supreme Court of Indiana.

Dec. 16, 1986.

J. Richard Kiefer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Calvin Little was convicted after a jury trial of rape, a class B felony, Ind.Code § 35–42–4–1(a) (Burns 1985 Repl.). He was sentenced to a term of imprisonment of twenty years.

In this direct appeal, Little argues the trial court erred when it admitted evidence of an alleged rape for which he had been acquitted sixteen months earlier. Little contends that in a criminal prosecution the doctrine of collateral estoppel bars the admission of evidence of a crime for which the defendant has been acquitted.

The facts most favorable to the judgment are as follows. Little knocked at the door of S.D.'s ground floor apartment in Marion at approximately 2 a.m. on July 15, 1983. He wore gray jogging pants and white tennis shoes but no shirt. Little appeared to have been running. He asked S.D. if he could use her bathroom, and she agreed. She was acquainted with Little, who had been in her apartment several times and lived ten blocks away.

Little began turning out lights in S.D.'s apartment as he returned from her bathroom. He kicked the front door shut and twisted S.D.'s arm behind her. They stumbled backward to the floor, and Little raped and sodomized her. Little fled on foot.

During Little's trial for the rape of S.D., the State presented the testimony of E.S., a woman who previously had accused Little of raping her. E.S. testified that Little appeared at the door of her ground floor apartment during the evening of September 1, 1982, and asked to use her bathroom. He left shortly thereafter. After E.S. went to bed later that evening, she heard a noise and found Little in her living room. He forced her onto the couch where he raped her. According to E.S., Little was wearing a t-shirt, gray jogging pants and white tennis shoes at the time. Little fled on foot.

E.S., who lived with her five-year-old son, was acquainted with Little. He lived seven blocks away and had been in her apartment before the day of the rape. Little denied raping E.S. and entered an alibi. Little was tried and acquitted on charges of rape and burglary in January 1983, approximately six months before the events involving S.D.

In final arguments during Little's trial for the rape of S.D., the prosecutor focused on the similarities between the accounts of the two alleged rapes. Both women knew Little, and he was familiar with the inside of their ground floor apartments. Both women lived close to Little's home and neither had adult roommates. The rapist gained entry under the pretext of using their bathrooms. He wore gray jogging pants and white tennis shoes each time. The rapes occurred early in the morning in the victims' living rooms. The perpetrator did not use a weapon. He spoke minimally during the attacks and then escaped on foot. "If you go up there and cut him loose, you've given him a license, it's just that simple—a license to go out and rape those black women," the prosecutor told the jury.

In Indiana, evidence of a crime other than that charged is generally inadmissible as proof of the guilt of the defendant; however, such evidence is admissible to show intent, motive, purpose, identity, or common scheme or plan. *Smith v. State*, (1983) Ind., 454 N.E.2d 412. The trial judge ruled that, in light of the similarities between the two rapes, the testimony of E.S. was admissible to show identity.

Counsel for Little has filed an uncommonly fine brief, arguing that the doctrine of collateral estoppel renders the evidence of the first rape inadmissible and that its consideration by the jury constituted reversible error. While this Court faced a comparable fact situation in *Hare v. State*, (1984) Ind., 467 N.E.2d 7, collateral estoppel presents a different, more narrow question of law.

With the decision in *Hare*, Indiana joined the majority of states which follows the rule that otherwise relevant evidence of a prior crime generally is not rendered inadmissible by the acquittal. The generic form of this "relevancy rule" takes the form of a two-prong test. *People v. Beamon*, 8 Cal.3d 625, 105 Cal.Rptr. 681, 504 P.2d 905 (1973). First, the trial judge must determine whether the evidence of the commission of the prior crime is sufficiently

convincing to warrant its admission. If so, the trial judge then must weigh the probative value of the evidence of the prior crime against its prejudicial impact. The acquittal is merely one element of this balancing test in most jurisdictions, although in Indiana the acquittal goes to the weight of that testimony about the prior crime, not to its admissibility. *Hare*, 467 N.E.2d at 18.

The defendant in *Hare* was accused of robbing a Shelbyville pharmacy. The trial court admitted the testimony of a pharmacist who said the defendant had robbed his Terre Haute store within a week of the Shelbyville robbery. The two robberies were similar in several respects, but the defendant had been acquitted of the Terre Haute robbery. We found probative evidence supported the allegation that the defendant committed the Terre Haute robbery. While acknowledging the rule that evidence of criminal conduct other than that charged generally is inadmissible, we ruled that evidence of the Terre Haute robbery could be admitted to show the defendant's intent, purpose, identification or common scheme or plan. We concluded that the admissibility of that evidence was not affected by the defendant's acquittal on that charge; the acquittal went to the weight of the pharmacist's testimony and not to its admissibility.

*Hare* and the case at bar present parallel facts, but the issue of collateral estoppel was never raised by defense counsel nor addressed by this Court in *Hare*. Therefore, that decision, which we do not disturb, does not compel a result in this case.

A majority of federal circuits and some state courts recognize that collateral estoppel bars the admission of evidence about a prior crime for which the defendant has been acquitted. Annotation, *Admissibility of Evidence as to other Offense as Affected by Defendant's Acquittal of that Offense*, 25 A.L.R. 4th 934 (1983). The doctrine gained wider acceptance after the United States Supreme Court ruled that collateral estoppel is an ingredient of the constitutional protection against double

jeopardy. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit." *Id.* at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. The interplay between double jeopardy and collateral estoppel has been described this way:

"(W)hile the parent doctrine of double jeopardy bars a subsequent prosecution based on a different section of the criminal code when "the evidence required to support a conviction upon one of them [the indictments] would have been sufficient to warrant a conviction upon the other," its progeny, collateral estoppel, bars only the reintroduction or relitigation of *facts* already established against the government. To state the distinction in more prosaic terms, the traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime."

*United States v. Mock,* 604 F.2d 341, 343–44 (5th Cir.1979).

In *Ashe,* the defendant was accused of robbing a group of six poker players. He was tried and acquitted on charges of robbing one of the players. The State subsequently tried the same defendant for robbing one of the remaining five players, and he was convicted. The only issue in both of the prosecutions was identification of the perpetrator. In reversing the conviction, the Supreme Court ruled that the second prosecution relitigated an issue already determined by the jury in the first prosecution—whether the defendant was one of the robbers. Therefore, collateral estoppel barred the second prosecution. *Ashe* incorporated the rule of collateral estoppel into the guarantee against double jeopardy to protect "a man who has been acquitted from having to 'run the gauntlet a second time." 397 U.S. at 446, 90 S.Ct. at 1195, 25 L.Ed.2d at 477.

In *Ashe,* the relitigated issue, identity, was an element necessary for conviction in both cases. The Court did not decide whether collateral estoppel can operate in situations, such as in this case, where the previously litigated fact is not essential to conviction.[1] Furthermore, many federal and state cases applying collateral estoppel in this context have involved related prosecutions arising from the same criminal act, unlike the situation here.[2] However, the use of collateral estoppel is not limited "to only those suits where the relitigation is essential for the maintenance of the subsequent lawsuit." *McDonald v. Wainwright,* 493 F.2d 204, 213 (5th Cir.1974). The collateral estoppel doctrine, prohibits the State from relitigating, for any purpose, an issue which was determined in a prior prosecution of the same party. No distinction is made between relitigation of an ultimate fact or an evidentiary fact; both are prohibited. *United States v. Kramer,* 289 F.2d 909 (2d Cir.1961).

---

**1.** While unquestionably prejudicial, Little's identification as the rapist of E.S. was not crucial to his conviction for the rape of S.D. The jury had sufficient evidence to convict Little of raping S.D. without the testimony of E.S. *Rutledge v. State* (1986), Ind., 495 N.E.2d 535 (uncorroborated testimony of a rape victim sufficient to support a conviction). Nonetheless, the admission of E.S.'s testimony, if erroneous, could hardly be considered harmless error because of the difficulty of gauging its impact on the jury's verdict. *See, Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *McDonald v. Wainwright,* 493 F.2d 204 (5th Cir. 1974).

**2.** For example, Little relies on *Mock,* 604 F.2d 341, in which the defendant was acquitted of participating in a drug conspiracy. He subsequently was prosecuted on tax fraud charges alleging unreported income from that same drug conspiracy. During the defendant's second trial, the federal prosecutor repeatedly referred to evidence indicating that the defendant had derived his unreported income from the marijuana sales which were the subject of the first trial, despite the defendant's acquittal. The Fifth Circuit reversed the defendant's tax fraud conviction, concluding that collateral estoppel barred the admission of evidence of the drug conspiracy for which he had been acquitted.

The case of *Blackburn v. Cross,* 510 F.2d 1014 (5th Cir.1975), presented facts essentially identical to those at hand. During the defendant's trial for rape of one woman, two other women testified that they also had been raped by the defendant at various times. The defendant earlier had been acquitted after trial of the rape of one of the witnesses. Relying on collateral estoppel, the Court of Appeals reversed after determining that the issue of consent had been determined in favor of the defendant in the previous trial but was being impermissibly relitigated in the second trial.

Implicit in this determination is the conclusion reached in *Ashe* that the use of collateral estoppel to bar testimony is constitutionally mandated under such circumstances. We agree that "once a defendant has satisfied one jury that he is not guilty of a crime, constitutionally-routed considerations of fairness preclude the Government from injecting any issues necessarily decided in his favor into a second trial for another offense." *United States v. Mespoulede,* 597 F.2d 329, 330 (2d Cir.1979). Accordingly, we adopt collateral estoppel as an analytical basis for determining the admissibility of evidence of former offenses for which a defendant has been acquitted.

Application of collateral estoppel in this context requires that the trial court determine what facts were necessarily decided in the first law suit. The court must examine the record of the prior proceeding, taking into consideration the pleadings, evidence, charge and other relevant matters. *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. Then the court must decide whether the government in a subsequent trial attempted to relitigate facts necessarily established against it in the first trial. *See, United States v. Mock,* 604 F.2d at 343, 344. If so, evidence of the former offense must be suppressed. "The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and ration-

ality." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475.

Only this two-part analysis can determine whether the trial court should have sustained Little's objection to the testimony of E.S. Although identity appears to be the only issue which could have been litigated in either of Little's rape trials, that question must be resolved by the trial court and will not be answered by this Court on the basis of the present record.

We therefore remand this cause to the trial court for an evidentiary hearing from which the court may make the requisite determination under a collateral estoppel analysis. If the trial court decides that an issue of fact determined against the State in Little's trial for the rape of E.S. was relitigated during his subsequent trial for the rape of S.D., the trial court must vacate the conviction and conduct a new trial excluding the testimony of E.S.

GIVAN, C.J., and DeBRULER and DICKSON, JJ., concur.

PIVARNIK, J., dissents without opinion.