John R. LUTZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–8809–CR–325.[1]

Court of Appeals of Indiana,
First District.

April 6, 1989.
Rehearing Denied May 24, 1989.

---

1. This case has been diverted from the Second District by direction of the Chief Judge.

James H. Voyles, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Appellant-defendant John Lutz (Lutz) appeals his convictions of one count of child molesting by sexual intercourse, a class C felony, and one count of child molesting by fondling or touching, a class D felony.

We affirm.

The facts favorable to the verdict show that fourteen-year old M.A. became acquainted with Lutz and his family through M.A.'s family membership in the same church as the Lutzes. Over time, M.A. began to date Lutz's son, and the families frequently gathered at their homes for meals and other social activities. Over the Labor Day weekend of 1985, the Lutzes secured the permission of M.A.'s parents for M.A. to accompany them on a trip to Ohio. Lutz and his wife, their two sons, and M.A. were along for the trip, which began the Friday evening of the Labor Day weekend. On Sunday afternoon during the Ohio trip while they were visiting Mrs.

Lutz's mother, Lutz asked M.A. to take a ride with him on a motorcycle. Lutz drove with M.A. to a nearby park, where the two got off the motorcycle and walked over to a tree. There, Lutz pulled up M.A.'s sweatshirt and fondled her breasts. He also seized M.A.'s hand and thrust it up the leg of his loose-fitting jogging shorts. When M.A. withdrew her hand and said "no," Lutz replied, "well, if you're not going to do anything, we might as well go back." He returned with M.A. to the house at which they were staying. They had been gone about twenty minutes.

The Lutzes and M.A. left Ohio for Indiana Sunday evening. They arrived at Lutz's condominium about midnight, and M.A. spent the night in the loft area which served as an extra bedroom.

The next morning, September 2nd, M.A. was awakened by Lutz fondling M.A.'s breasts. Mrs. Lutz was taking a shower and the boys were in bed. Lutz asked M.A. to come downstairs with him. Once downstairs, Lutz opened his robe and began to masturbate, ejaculating into a towel. Following this episode and after breakfast, Mrs. Lutz left to go to the grocery store, and the boys were in the garage fixing their bicycles. M.A. had showered, and was blow-drying her hair when Lutz entered the bathroom. He lifted M.A. onto the counter, opened her bathrobe, and pulled down her panties. He then placed his penis inside M.A.'s vagina. M.A. was too frightened to protest. Later that day, M.A. accompanied Lutz and his sons to the airport for a ride on an airplane (Lutz was a commercial pilot). Later that day, the families had a cookout together.

In February, 1987, M.A. told her parents and some friends about the molestations. The police were contacted, and the charges of which Lutz was convicted were filed. Lutz filed an alibi motion, and the State responded alleging the acts occurred on Sept. 2, 1985, at Lutz's home. One trial resulted in a mistrial. After a second jury trial began six days later, Lutz was convicted of the offenses.

He presents nine issues, which we consolidate and restate as five:

    I.  Whether the court erred in denying Lutz's motion for mistrial following an unresponsive answer given by M.A.'s father.

    II.  Whether the trial court erred when it allowed testimony and admitted exhibits regarding uncharged acts of sexual misconduct occurring after September 2, 1985.

    III.  Whether Lutz received a fair trial when the trial court permitted several State's witnesses to testify although those witnesses had conferred with one another regarding their testimony.

    IV.  Whether the trial court erred when it permitted the State to present evidence of M.A.'s reputation for truth and veracity in rebuttal to the defense's cross-examination of M.A.

    V.  Whether the verdict is supported by sufficient evidence in light of Lutz's alibi evidence.

### I.

Lutz moved for mistrial following the answer M.A.'s father gave during direct examination:

Q.  At any point in time during this period, did you have any communications with Russell Lutz and his family?

A.  Yes.

Q.  When did you communicate with these people?

A.  It was approximately one week later.

Q.  Would you explain to the jury what those communications were?

A.  Well, in between that time I had to get a prescription filled for [M.A.] that Dr. Loescher had written to protect her from an infection.

Lutz's mistrial motion, as well as his motion to strike the answer, were denied.

Whether to grant a mistrial is a question committed to the sound discretion of the trial court. *Garcia v. State* (1987), Ind. App., 509 N.E.2d 888. Admonishment of the jury is similarly within the discretion-

ary ambit of the trial court and is reviewable only for an abuse of discretion. *Ballard v. State* (1982), Ind., 438 N.E.2d 707.

◼  The father's statement was not connected at all to Lutz, following as it did the testimony of M.A.'s physician that a physical examination he had given M.A. in 1987 indicated no adverse physical consequences as a result of any sexual activity. Thus, while the answer was unresponsive and could have been stricken as irrelevant, it could not have harmed Lutz. In fact, the jury might have drawn an inference damaging to the State's case: that M.A. had engaged in sexual activity since the date of the offenses. We do not find any abuse of discretion. Therefore, we decline to reverse the trial court's overruling Lutz's motions for mistrial and admonishment.

### II.

◼  The State presented evidence that in December, 1985, Lutz had driven M.A. to a housing addition near his home and had molested her in his car. The court also admitted State's exhibits 4 and 5, which were a map and poster of the Deerfield subdivision where the molesting occurred. Lutz argues that any evidence of uncharged criminal conduct not occurring on September 2nd should have been excluded. With respect to the events occurring in Ohio directly before the September 2nd acts, Lutz seems to argue that this evidence was inadmissible because it violated the alibi notice. He never relates the admissibility of the Ohio events to the law excepting depraved sexual instinct from the general rule against admissibility of separate, independent and distinct crimes to establish guilt of a defendant. *Stout v. State* (1985), Ind., 479 N.E.2d 563. Nevertheless, we conclude that evidence of Lutz's molesting M.A. in the park in Ohio was admissible under the exception for depraved sexual instinct.

◼  The gist of Lutz's argument is that the December 1985 acts were not admissible under the depraved sexual instinct exception because the rule is that only *prior* crimes are admissible under any exception.

Lutz cites language in *Lewis v. State* (1983), Ind., 451 N.E.2d 50, 54. The December molestation occurred subsequent to the date of the offense. This issue was decided squarely against Lutz in *Hall v. State* (1987), Ind.App., 504 N.E.2d 298. *Hall* rejected any distinction based upon whether the uncharged acts occurred before or after the charged crime, leaving open only the question whether the uncharged crime is too remote in time from the offense charged. Lutz does not raise any question about remoteness. There was no error in admitting any evidence of uncharged crimes which manifested a depraved sexual instinct.

### III.

Lutz's next contention is that the trial court erred in allowing the testimony of State's witnesses Mark and Kim Pohlkotte, and Charles Hamilton after those witnesses and M.A. met with the deputy prosecuting attorney the Saturday after the mistrial to discuss their upcoming testimony. Lutz's motion for mistrial following cross-examination of Mark Pohlkotte was denied. Lutz did not seek to have Mr. Pohlkotte's testimony stricken from the record.

■ Lutz asserts that his cross-examination of Pohlkotte revealed that, with the complicity of the prosecutor, the witnesses had violated the separation of witnesses order that had been in effect throughout the first trial, and had been renewed at the start of the second trial along with all other motions granted originally. He argues that the prosecutor's actions constituted misconduct, necessitating a mistrial. The State argues that the issue is waived because Lutz has not presented a sufficient record on appeal, documenting the terms of the separation order. It is apparent from the record that Lutz's pre-trial motion for separation of witnesses was granted without specifying at any time during the first trial whether the order continued during the time between trials. It seems likely such a contingency was never contemplated and that the record is as complete as

it can be; hence, we will consider Lutz's claim on its merits.

Enforcement of an order for separation of witnesses is left to the trial court's sound discretion. *Flores v. State* (1985), Ind., 485 N.E.2d 890. Even if the order is violated, the court, in its discretion, may allow the violating witness to testify. *Ashbaugh v. State* (1980), 272 Ind., 557, 400 N.E.2d 767. The conduct of the witness who violates the order may go to the jury on the question of his credibility. *Taylor v. State* (1891), 130 Ind. 66, 29 N.E. 415.

■ We are of the opinion that Lutz has not established that the State's witnesses violated any separation of witnesses order. Lutz had not requested an order that the separation order continue in effect during the six-day interval between the end of the first trial and the start of the second trial. Lutz's attorney apparently was not convinced that the separation order in the first trial automatically carried over between trials. In his argument to the court on the mistrial motion, he admitted "I am well aware that this court did not continue the separation of witnesses' order in effect . . ." Even if it could be argued that the separation order was technically in effect, we doubt whether the meeting which took place with the State's witnesses and the prosecutor could be deemed misconduct on the part of the prosecutor. At the most any violation was inadvertent; in the absence of a cautionary instruction at the end of the first trial, the witnesses, and even the parties could have been doubtful whether the order was still in effect.

■ Even if a separation order was in effect, Lutz's cross-examination does not reveal that any violation occurred. Pohlkotte admitted that the prosecutor had alerted him to the possibility that his memory of the events of a certain day might be faulty. However, his testimony falls short of establishing that the witnesses discussed what they had testified to during the previous trial, or that the prosecutor had divulged the discrepancies.[2] A separation of

---

2. Under Federal Rule of Evidence 615, a witness's reading a transcript of another witness's

testimony from a prior trial is a violation of the separation order. *U.S. v. Jimenez* (11th Cir.

witnesses order is to prevent witnesses from gaining knowledge of questions actually posed to, and answers actually given by, prior witnesses, and adjusting their own testimony as a result thereof. *Clark v. State* (1985), Ind., 480 N.E.2d 555. The prosecutor was permitted to prepare her witnesses for the upcoming trial and to review what their testimony would be. From the state of the record before us, that is all that was done. Moreover, M.A.'s and Mr. Pohlkotte's testimony was subjected to "full-bore" cross-examination designed to reveal to the jury the circumstances of the meeting. *See Jimenez, supra,* n. 2. There was no reversible error in this issue.

## IV.

Lutz complains that the court erred when it permitted the State to introduce testimony of M.A.'s reputation for truth and veracity in its case on rebuttal. He argues that by his cross-examination of M.A., he had not sufficiently impugned her character to allow such testimony in rebuttal.

■ Admission or rejection of evidence is within the sound discretion of the trial court. *Mengon v. State* (1987), Ind., 505 N.E.2d 788. Lutz's cross-examination of M.A. consisted primarily of impeachment by prior inconsistent statement. It is settled in Indiana that when a witness has been impeached by proof that he made prior inconsistent statements, a party may support that witness by proof of his witness's reputation for truth and veracity. *Seeger v. Pfeifer* (1870), 35 Ind. 13. The court committed no error in allowing the State's rebuttal.

## V.

Lutz's final issue is whether the evidence was sufficient in light of Lutz's strong alibi evidence, supported by several witnesses, which placed him at Indianapolis International Airport performing a maintenance flight during the morning and early afternoon of September 2, 1985.

1986), 780 F.2d 975. In *Jimenez,* the witness had prepared for trial by reading another witness's testimony from a prior mistrial on the

When the sufficiency of the evidence is the issue presented upon appeal, we look only to the evidence favorable to the State and all reasonable inferences to be drawn therefrom. Neither do we judge the weight of the evidence nor the credibility of the witnesses. However, every criminal conviction must be supported by evidence upon each material element of the crime charged, and that evidence must be such as will support the essential conclusions beyond a reasonable doubt.

*Lottie v. State* (1974), 262 Ind. 124, 311 N.E.2d 800.

■ The uncorroborated testimony of a prosecuting witness may be sufficient to sustain a conviction, notwithstanding strong alibi evidence in the form of several apparently disinterested witnesses. *Lambert v. State* (1987), Ind., 516 N.E.2d 16. The evidence supporting the verdict showed that on September 2, 1985, Lutz fondled M.A. and had sexual intercourse with her at his home during the morning hours. M.A.'s father testified that during a confrontation with Lutz, Lutz never denied the allegations, saying he had "turned it all over to the Lord." M.A. testified that she had accompanied Lutz and his sons on the flight. The flight log did not establish when Lutz arrived and left in the plane; thus, his alibi did not preclude Lutz's being with the victim in his home on the morning of September 2nd. Under our standard of review, the evidence was sufficient to support the verdict.

Having found no error, the trial court is affirmed.

Judgment affirmed.

GARRARD, P.J., and NEAL, J., concur.

morning *after* the witness sequestration order was given.